```
 1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF VIRGINIA
 2                   ALEXANDRIA DIVISION

 3   --------------------------x
     UNITED STATES OF AMERICA,  :    Criminal Action No.:
 4                              :    1:22-cr-92
          versus               :
 5                              :    Tuesday, June 7, 2022
                               :
     ALLISON ELIZABETH          :
 6   FLUKE-EKREN,               :
                               :
 7             Defendant.       :
     --------------------------x
 8

 9        The above-entitled plea hearing was heard before the
     Honorable Leonie M. Brinkema, United States District Judge.
     This proceeding commenced at 11:28 a.m.
10

                        A P P E A R A N C E S:
11

12   FOR THE GOVERNMENT:    RAJ PAREKH, ESQUIRE
                            JOHN GIBBS, ESQUIRE
13                          OFFICE OF THE UNITED STATES ATTORNEY
                            2100 Jamieson Avenue
14                          Alexandria, Virginia  22314
                            (703) 299-3700

15   FOR THE DEFENDANT:     JOSEPH KING, ESQUIRE
                            SEAN SHERLOCK, ESQUIRE
16                          KING, CAMPBELL, PORETZ & MITCHELL
                            108 North Alfred Street
17                          Alexandria, Virginia  22314
                            (703) 683-7070
18

19   COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                            Official Court Reporter
20                          United States District Court
                            401 Courthouse Square
21                          Alexandria, Virginia  22314
                            (571) 298-1649
22                          S.AustinReporting@gmail.com

23        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

24

25
                                                          1
```

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  Criminal Case 22-92, United

 3    States of America versus Allison Elizabeth Fluke-Ekren.

 4            Would counsel please note their appearances for

 5    the record.

 6            MR. PAREKH:  Good morning, Your Honor.  Raj Parekh

 7    and John Gibbs on behalf of the United States.

 8            THE COURT:  Good morning.

 9            MR. KING:  Good morning, Your Honor.  Joseph King

10    and Sean Sherlock on behalf of Allison Fluke-Ekren.

11            THE COURT:  All right.  And we have all the

12    paperwork ready.  Very good.

13            And, Counsel, assuming that you're fully

14    vaccinated and boosted, when you're at the lectern, you can

15    remove your masks, all right, so we can hear you clearly.

16            MR. PAREKH:  Thank you, Your Honor.

17            MR. KING:  Thank you, Your Honor.

18            THE COURT:  All right.  Ms. Fluke-Ekren, if you'll

19    come up to the lectern, we'll have to administer an oath to

20    you.

21            THE DEPUTY CLERK:  Please raise your right hand.

22                (Defendant sworn in open court.)

23            THE DEPUTY CLERK:  Thank you.

24            THE COURT:  All right.  And if you can -- are you

25    vaccinated?
```

```
 1                    THE DEFENDANT:  No, ma'am.

 2                    THE COURT:  All right.  Then you're going to have

 3       to keep the mask on, but speak in a good loud voice so we

 4       can hear you.

 5                    THE DEFENDANT:  Okay.

 6                    THE COURT:  All right.  You have just taken a

 7       promise to tell the truth in answering all of the Court's

 8       questions.  That means that if you should lie in answering

 9       any question, the Government could prosecute you for a new

10       and separate crime called perjury; do you understand that?

11                    THE DEFENDANT:  Yes, I do.

12                    THE COURT:  For the record, what is your full

13       name.

14                    THE DEFENDANT:  Allison Elizabeth Fluke-Ekren.

15                    THE COURT:  Ms. Fluke-Ekren, how old have you?

16                    THE DEFENDANT:  I'm 42.

17                    THE COURT:  How much education have you completed?

18                    THE DEFENDANT:  I have a master's degree in

19       teaching from Earlham College.

20                    THE COURT:  Are you able to read, write,

21       understand and speak English?

22                    THE DEFENDANT:  Yes, I am.

23                    THE COURT:  Are you presently on probation, parole

24       or supervised release from any other criminal matter?

25                    THE DEFENDANT:  No.
```

                                                                     3

```
 1            THE COURT:  Are you at this time under the care of
 2   a doctor for any physical or mental condition?
 3            THE DEFENDANT:  No.
 4            THE COURT:  Within the last 24 hours, have you
 5   taken any kind of medicine, whether by prescription or
 6   over-the-counter like an aspirin or an Advil?
 7            THE DEFENDANT:  No.
 8            THE COURT:  Are you at this time under the
 9   influence of any illegal drugs or alcohol?
10            THE DEFENDANT:  No.
11            THE COURT:  All right.  We have several documents
12   we need to go over this morning in connection with your
13   plea, and the first one has the title waiver of indictment,
14   and I see what appears to be your signature on the document.
15            Did you, in fact, sign the waiver of indictment?
16            THE DEFENDANT:  Yes, I did.
17            THE COURT:  And before you signed the waiver, did
18   you have time to discuss it with your counsel?
19            THE DEFENDANT:  Yes, I did.
20            THE COURT:  And did you ask your counsel questions
21   about the waiver?
22            THE DEFENDANT:  Yes, I did.
23            THE COURT:  And did they explain to you that under
24   the laws and Constitution of the United States, you have an
25   absolute right to require that the prosecutors go before a
```

4

1    group of people called a federal grand jury with the

2    evidence that they have developed concerning your being

3    involved in the offense that they want to charge you with;

4    do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Now, a federal grand jury is made up

7    of anywhere from 16 to 23 ordinary citizens, and they're

8    brought together on essentially a random basis.  And the job

9    of a grand jury is to review potential federal felony-level

10   criminal prosecutions.  And what happens in the grand jury

11   process, which is a secret process, is a prosecutor like

12   Mr. Parekh will go into the room, advise the grand jurors

13   that he believes the person has committed one, or, in some

14   cases, multiple federal crimes, and then he presents

15   evidence to the grand jurors supporting that position.

16           Now, the evidence could be the testimony of

17   witnesses, it could be wiretaps, photographs, bank records,

18   whatever evidence the Government feels is needed, and then

19   the prosecutor leaves the room so only the grand jurors are

20   alone together.  And if at least 12 of the grand jurors are

21   satisfied that the evidence presented establishes probable

22   cause to believe that the person has committed the crime or

23   crimes the Government wants to charge, the grand jury will

24   issue a document called an indictment, and that is normally

25   how a felony-level prosecution begins in Federal court; do

5

```
 1   you understand that?

 2              THE DEFENDANT:  Yes, I do.

 3              THE COURT:  And that grand jury process is

 4   considered to be a way of protecting a person's rights,

 5   because it exists to ensure that someone is not publicly

 6   charged with serious criminal activity without there being a

 7   factual basis to support the charge or charges; do you

 8   understand that?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Now, a person can give up her right to

11   that grand jury review process, and that would be done by

12   signing a waiver of indictment, such as the one that you

13   have signed.

14              The word "waiver" in the law means to give

15   something up.  So by waiving indictment, you are essentially

16   giving up that grand jury review process, and, instead,

17   you're going to permit the prosecutors to come to court

18   today and file this felony charge against you without the

19   charge ever having been presented to a grand jury for

20   evaluation; do you understand that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  And did you understand all of that

23   before you signed the waiver?  In other words, did your

24   attorneys basically explain to you what I've just explained?

25              THE DEFENDANT:  They did.
```

6

1              THE COURT:  Now, other than the plea agreement

2    which you have reached with the United States, do you

3    believe that anybody has promised or suggested to you that

4    by waiving indictment, you would somehow get a lighter

5    sentence or more favorable treatment by the Court?

6              THE DEFENDANT:  No.

7              THE COURT:  Has anyone or anything, such as the

8    COVID virus, put any force or pressure on you to waive

9    indictment today?

10             THE DEFENDANT:  No.

11             THE COURT:  And, Counsel, who's going to be the

12   main spokesperson?

13             MR. KING:  Your Honor, I will be.

14             THE COURT:  All right.  Have you had -- Mr. King,

15   have you had enough time to carefully go over this waiver

16   with your client?

17             MR. KING:  Yes, Your Honor.

18             THE COURT:  Are you satisfied that the defendant

19   is entering her waiver in a knowing and voluntary fashion?

20             MR. KING:  I am, Your Honor.

21             THE COURT:  All right.  Then based on these

22   answers, I'm satisfied the defendant has, with the advice of

23   counsel, knowingly and voluntarily waived her right to

24   indictment.  And that being the case, that allows the United

25   States to file the following charge using a criminal

                                                              7

1   information:

2        And the charge alleges that in or about 2014 and

3   continuing thereafter, up through and including in or about

4   May of 2019, in an offense committed outside of the

5   jurisdiction of any particular state or district of the

6   United States, the defendant, Allison Fluke-Ekren, also

7   known as Allison Ekren, also known as Umm Mohammed

8   al-Amriki, and also known as Umm Mohammed, who was first

9   brought to and found in the Eastern District of Virginia,

10  and others, known and unknown, did conspire to provide

11  material, support or resources, as that term is defined in

12  Title 18 of the United States Code Section 2339A(b), namely

13  personnel, including herself, and services to a foreign

14  terrorist organization, namely the Islamic State of Iraq and

15  al-Sham, also known as ISIS, which at all relevant times was

16  designated by the United States Secretary of State as a

17  foreign terrorist organization pursuant to Section 219 of

18  the Immigration and Naturalization Act, knowing that ISIS

19  was a designated foreign terrorist organization, that ISIS

20  engages in or has engaged in terrorist activity, and that

21  ISIS engages and has engaged in terrorism.  And that offense

22  is alleged to be a violation of Title 18 of the United

23  States Code Section 2339(b).

24        To that charge, Ms. Fluke-Ekren, how do you want

25  to plead, guilty or not guilty?

8

```
1              THE DEFENDANT:  Guilty.

2              THE COURT:  Now, before the Court accepts your

3    guilty plea, I'm going to ask you a series of questions

4    about your guilt plea, your plea agreement and the facts of

5    the case.  At any point this morning if you should change

6    your mind and decide you don't want to plead guilty, you can

7    withdraw the plea, we stop this process, and we'll set this

8    case for trial within the next 70 days; do you understand

9    that?

10             THE DEFENDANT:  I do.

11             THE COURT:  All right.  Now, the written plea

12   agreement that's been filed with the Court today --

13             MR. PAREKH:  I apologize, Your Honor.  Can I just

14   make one correction?

15             THE COURT:  Yes.

16             MR. PAREKH:  The case has not yet been indicted,

17   and so if that were the case and she didn't go forward

18   today, we would indict the case and then be before the Court

19   with an arraignment.

20             THE COURT:  All right.  That's fine.

21             The plea agreement that's before the Court today

22   is eight pages long, and I see on the last page what appears

23   to be your signature and yesterday's date, which was

24   June 6th.

25             Did you, in fact, sign the written plea agreement?
```

                                                              9

```
 1              THE DEFENDANT:  Yes, I did.

 2              THE COURT:  And you signed it yesterday?

 3              THE DEFENDANT:  Yes.

 4              THE COURT:  Now, before you signed the plea

 5     agreement, did you read it over for yourself word for word?

 6              THE DEFENDANT:  I did.

 7              THE COURT:  And approximately when did you first

 8     see a copy of the plea agreement?

 9              THE DEFENDANT:  Maybe -- maybe two weeks ago.

10              THE COURT:  All right.  And I assume one or both

11     of your attorneys brought it to you?

12              THE DEFENDANT:  Yes.

13              THE COURT:  All right.  Were you able to keep it

14     with you in the prison, or did you have to return it to

15     them?

16              THE DEFENDANT:  They offered to let me keep it,

17     but we had already read it and discussed it, so I chose not

18     to.

19              THE COURT:  All right.  That's fine.

20              And since -- have there been any changes made to

21     the plea agreement since it was first shown to the

22     defendant, Mr. King?

23              THE DEFENDANT:  There have -- oh, sorry.

24              THE COURT:  Yeah.  Were there any changes made?

25              MR. KING:  Your Honor, there was --
```

```
 1              THE COURT:  To the plea agreement itself.

 2              MR. KING:  There was some language that was

 3    removed from the plea agreement --

 4              THE COURT:  All right.

 5              MR. KING:  -- from the very initial version that

 6    she saw.

 7              THE COURT:  All right.  But the version that's in

 8    court today, you have read every word of it; is that

 9    correct?

10              THE DEFENDANT:  I have.

11              THE COURT:  All right.  I want you to turn to

12    page 8.  I assume you have a copy there.

13              There are two sentences above your signature that

14    I want to make sure you appreciate are part of the plea

15    agreement.  And they go:  "I have read this plea agreement

16    and carefully reviewed every part of it with my attorneys.

17    I understand this agreement and voluntarily agree to it."

18              Do you see those two sentences?  They're on page 8

19    right above where your signature would be.

20              THE DEFENDANT:  Yes.

21              THE COURT:  Are they true in all respects?

22              THE DEFENDANT:  They are.

23              THE COURT:  Now, by telling the Court that you've

24    read the entire plea agreement and discussed it thoroughly

25    with counsel and that you understand it and are voluntarily
```

11

```
1    agreeing to it, that means you will be bound by everything
2    that's written in this eight-page document, even if I don't
3    go over every paragraph or page with you today in court; do
4    you understand that?
5              THE DEFENDANT:  I do.
6              THE COURT:  And the reason for that result is that
7    this plea agreement is really a written contract between you
8    and the United States Government.  And when a person signs a
9    written contract after she's carefully reviewed it herself
10   and with counsel and she understands it when she signs it
11   and she signs it voluntarily, then that becomes a binding
12   legal instrument, and you can't just come back to court in a
13   couple of weeks and say, well, you know, I thought more
14   about it, I don't like what's on page 5.  It's too late; do
15   you understand that?
16             THE DEFENDANT:  I do.
17             THE COURT:  Now, other than the plea agreement
18   that's in court right now, do you believe you have any side
19   deals or side understandings with any prosecutor,
20   investigator or anybody else concerning this case?
21             THE DEFENDANT:  No.
22             THE COURT:  And counsel; is that correct?
23             MR. KING:  Yes, Your Honor.
24             THE COURT:  All right.  Then let's turn to page 1,
25   paragraph 1.  There it indicates that you have agreed to
```

12

```
 1    waive indictment, which you've done, and to enter a guilty

 2    plea to the criminal information that I read to you.

 3             Now, do you understand that that offense, that is

 4    essentially providing material support to a terrorist

 5    organization, exposes you to a maximum penalty of 20 years

 6    of imprisonment.  In addition, you could be required to pay

 7    a fine of up to $250,000, there's an automatic special

 8    assessment of $100, and the potential for a lifetime of

 9    supervised release; do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  In addition, of course with any felony

12    offense, there is the potential for having to make

13    restitution to any victims of the crime and a forfeiture of

14    any assets that might have been obtained during the criminal

15    activity; do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Now, in the federal system, parole no

18    longer exists, and that means whatever term of imprisonment

19    is imposed must be fully served; do you understand that?

20    There is such a thing as -- there are administrative

21    features of a sentence where the Bureau of Prisons can give

22    some credit for good time behavior, so there is some

23    administrative relief to a sentence, but it's not like

24    parole.

25             Now, you seem to have a question about that, so do
```

13

```
 1    you need to talk to your attorneys?

 2              THE DEFENDANT:  I think you just answered it.

 3    That's what I was going to ask.

 4              THE COURT:  The Bureau of Prisons -- it's -- the

 5    ballpark figure is about 15 percent is my understanding.  I

 6    don't think that's changed, but it's not a guarantee.  If

 7    there are problems while a person's incarcerated, they may

 8    not get that full credit.

 9              THE DEFENDANT:  I understand.

10              THE COURT:  But it's called good time credit, and,

11    again, it's not parole.  So when I tell a defendant that,

12    you know, you're looking at X type of sentence, that should

13    be the expectation.

14              THE DEFENDANT:  Uh-huh.

15              THE COURT:  All right.  So, in this case, you're

16    looking at up to 20 years of imprisonment; do you understand

17    that?

18              THE DEFENDANT:  I do.

19              THE COURT:  All right.  When the prison portion of

20    this sentence has been fully satisfied, then the supervised

21    release portion goes into effect.  When a person is on

22    supervised release, she's under the control of a federal

23    probation officer, and there may be requirements to do

24    certain things, as well as requirements not to do certain

25    things.  And I cannot tell you what those conditions could
```

                                                                    14

be at this point because I haven't seen a presentence

report.

What you need to understand at this point,

however, is that if any of those conditions are violated,

then you can be brought back to court.  And, at that point,

if the violation is established, you could be sent back to

prison for a significant period of time; do you understand

that?

THE DEFENDANT:  I do.

THE COURT:  All right.  Now, when it comes time

for sentencing, the Court is going to be looking at two

sources of law, the Federal Sentencing Guidelines and

Section 3553(a) of Title 18 of the United States code.  And

some of this is discussed in paragraph 5 of the plea

agreement starting on page 3.

But under the guidelines, the Court has to make

two factual decisions before the guidelines can actually be

calculated.  First, we have to determine your criminal

history.  Criminal histories are divided into six

categories, with each category getting a number.  A Number 1

criminal history goes to someone who's never been in trouble

with the law or has a very minor record.  Then as

convictions, probation violations or supervised release

violations and other problems occur, the score goes up with

a Level 6 going to the most serious offenders; do you

1    understand that?

2              THE DEFENDANT:  I do.

3              THE COURT:  And then the Court must determine the

4    offense level.

5              Now, every Federal crime has a number given to it

6    by the Sentencing Commission, and then depending upon the

7    particular facts of the case, that number can go up or down.

8    And in paragraph 5 of your plea agreement, you and the

9    Government have agreed to several guideline factors.  I want

10   to, first of all, make sure you understand that what's in

11   paragraph 5 is binding on you and your attorneys and the

12   prosecutors, but in no respect does it limit or bind the

13   probation office, which prepares a presentence report for

14   the Court, or the Court; do you understand that?

15             THE DEFENDANT:  I do.

16             THE COURT:  But what you have agreed to, as I

17   understand it, is the following:  You've agreed that the

18   base offense level for providing material, support or

19   resources to a designated foreign terrorist organization

20   would be a 26, and then there would be a 12-level increase

21   for terrorism; a four-level increase for playing an

22   aggravating role, that is either being an organizer or a

23   leader; a two-level increase for the offense involving the

24   provision of firearms and explosives.  And that would bring

25   a total offense level to 44; is that part of your

16

1    understanding?

2            THE DEFENDANT:  It is.

3            THE COURT:  All right.  Then a way in which an

4    offense level can be reduced is if a defendant fully accepts

5    responsibility for her criminal conduct, in which case two

6    levels can be reduced, and, in some cases, and in your plea

7    agreement, the Government has agreed that if you qualify for

8    that two-level reduction, the Government would file a motion

9    requesting that you get a third level reduction, which is

10   the maximum number of reductions you can get for acceptance

11   of responsibility; is that part of your understanding as

12   well?

13           THE DEFENDANT:  It is.

14           THE COURT:  All right.  And then in the very last

15   paragraph of paragraph 5 it says that both you and the

16   Government have not agreed about any other sentencing

17   factors.  That means your counsel can try to argue factors

18   that would mitigate or reduce the guidelines, and the

19   Government can argue for factors that might increase them;

20   is that part of your understanding?

21           THE DEFENDANT:  That is.

22           THE COURT:  But at the end of the day, it will be

23   the Court who will decide, first of all, your criminal

24   history number, and then will determine the offense number.

25   And then those two numbers are put on the one-page chart,

                                                            17

```
 1    which is essentially a matrix, and that establishes an
 2    advisory guideline range.

 3            Now, the Court must consider that range but is not
 4    required to sentence within it.  And if the Court has good
 5    reasons, it can sentence above a guideline range or below
 6    the range.  The only limit on the Court's sentencing power
 7    is the statute of conviction.  That means the Court cannot
 8    sentence you to more than 20 years of imprisonment no matter
 9    what the guidelines might be; do you understand that?

10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  All right.  Now, defendants normally
12    have the right to appeal the sentence imposed on them, but
13    if you look at the next paragraph, paragraph 6, which is on
14    page 4, in particular the second sentence beginning with the
15    word "nonetheless," as a part of this plea agreement, you
16    are knowingly waiving -- that same word, which means giving
17    up -- your right to appeal both the conviction and any
18    sentence within the statutory maximum described above on any
19    ground whatsoever except for the ground of ineffective
20    assistance of counsel, which could be considered on a direct
21    appeal; do you understand that?

22            THE DEFENDANT:  I do.

23            THE COURT:  All right.  Now, in exchange for your
24    guilty plea today, the Government in paragraph 7 has agreed
25    that it will not further criminally prosecute you in the
```

1    Eastern District of Virginia for any of the activities

2    described either in the criminal information or in the

3    statement of facts.  But I want to make sure you understand

4    that this immunity does not protect you from being

5    prosecuted by any state government of the United States.  So

6    the Commonwealth of Virginia could still prosecute you if

7    you've committed some kind of criminal act within the

8    Commonwealth; do you understand that?

9            THE DEFENDANT:  I do.

10           THE COURT:  All right.  And my understanding is

11   the Government is not seeking any restitution or forfeiture

12   in this case; is that correct?

13           MR. PAREKH:  Not at this time, Your Honor.

14           THE COURT:  Well, is there the possibility?

15           MR. PAREKH:  I don't believe so, Your Honor.  I've

16   been in touch with a number of the individuals who are

17   witnesses in this case, as well as individuals that, you

18   know, we believe have been victimized by the defendant, and

19   they're not claiming any restitution.  So none have been

20   brought to our attention.  We did discuss that.

21           THE COURT:  All right.  Again, I still want to

22   make sure the defendant understands that that is always a

23   possibility.  If somebody who qualifies as a victim, and I

24   don't know if there will be any such people, were to come in

25   and seek compensation for mental health, anguish or

                                                            19

1   something like that, you might be liable for that; do you

2   understand?

3           THE DEFENDANT:  I understand.

4           THE COURT:  Does that make any difference in terms

5   of your decision to plead guilty?

6           THE DEFENDANT:  No.

7           THE COURT:  No.  All right.

8           Have you had enough time to explain everything you

9   know about this case to your attorneys?

10          THE DEFENDANT:  Yes, I have.

11          THE COURT:  Have they discussed with you the

12  nature of this charge and any ways in which you could

13  possibly defend yourself against the charge if you pled not

14  guilty and you went to trial?

15          THE DEFENDANT:  They have.

16          THE COURT:  All right.  And, Mr. King, did you and

17  co-counsel get discovery in this case?

18          MR. KING:  Yes, we did, Your Honor.  We received

19  an enormous production from the Government, actually

20  multiple productions which included FBI 302s, grand jury

21  transcripts, audios and lots of other information.  It was

22  quite a bit that was provided by the Government.

23          THE COURT:  And you were able to share that with

24  your client?

25          MR. KING:  We've been able to share significant

20

```
 1    parts of that, and the important parts of that with the
 2    client.  The volume is so great that not everything could be
 3    shared with her yet.  But the important materials that
 4    support the statement of facts have all been shared and
 5    discussed.
 6              THE COURT:  All right.  And did you keep
 7    Ms. Fluke-Ekren completely advised as to all your plea
 8    bargaining efforts on her behalf?
 9              MR. KING:  Yes, Your Honor.
10              THE COURT:  All right.  And I want to make sure
11    I've heard from the defendant as well.
12              First of all, do you feel that your attorneys
13    discussed with you, sufficiently for you to make an informed
14    decision, the kind of evidence which the Government had
15    developed against you?
16              THE DEFENDANT:  I do.
17              THE COURT:  And do you feel they kept you fully
18    advised as to their plea bargaining efforts on your behalf?
19              THE DEFENDANT:  Yes, I do.
20              THE COURT:  Are you fully satisfied with the way
21    in which your counsel, first of all, negotiated this plea?
22              THE DEFENDANT:  Yes, I am.
23              THE COURT:  Are you fully satisfied with the way
24    in which they have been representing you up to this point?
25              THE DEFENDANT:  Yes, I am.
```

21

1          THE COURT:  All right.  Now, do you understand you

2     still, at this time, have a right to change your mind --

3          THE DEFENDANT:  I understand.

4          THE COURT:  -- and plead not guilty, and if you

5     were to do so, then this case would eventually go to trial.

6     And if it did go to trial, then the burden at trial would be

7     on the prosecution to prove you guilty.  There's absolutely

8     no burden on a defendant to prove her innocence, so all the

9     burden would be on the Government's side; do you understand

10    that?

11         THE DEFENDANT:  I understand.

12         THE COURT:  And in order for them to do that, they

13    would have to prove each and every one of the essential

14    elements of the events beyond a reasonable doubt; do you

15    understand that?

16         THE DEFENDANT:  I understand.

17         THE COURT:  And, in particular, they have to prove

18    that what you did, you did so knowingly and intentionally.

19    That is that you knew that the organization to which you

20    were providing services was, in fact, deemed a terrorist

21    organization by the United States Government; do you

22    understand that?

23         THE DEFENDANT:  I understand that.

24         THE COURT:  And they would also have to be able to

25    prove beyond a reasonable doubt that the first time that you

                                                            22

1   entered into the United States was in this district, that's

2   how this court got jurisdiction.  If you had landed in

3   Miami, the jurisdiction would have been in the Southern

4   District of Florida, for example; do you understand that?

5              THE DEFENDANT:  I do.

6              THE COURT:  All right.  Now, if you went to trial,

7   there's certain rights and protections you would have at

8   trial that are essentially given up by pleading guilty.

9              First, at a trial, you would have the right to see

10  and hear all of the Government's witnesses, and you would

11  have the right to cross-examine and examine all of that

12  evidence through the questions of your attorney; do you

13  understand that?

14             THE DEFENDANT:  I do.

15             THE COURT:  You would have a right to ask the

16  Court for help in getting witnesses and/or physical evidence

17  brought to the courthouse, and that would be done by having

18  the Court issue subpoenas; do you understand that?

19             THE DEFENDANT:  I do.

20             THE COURT:  At trial, you could have testified as

21  a witness; do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  But you would also have a right under

24  the Fifth Amendment to the Constitution to remain silent.

25  And if you chose not to testify, no inference of guilt could

                                                            23

```
 1    be drawn from your silence; do you understand that?

 2              THE DEFENDANT:  I understand.

 3              THE COURT:  You would, of course, have the right

 4    to the help of an attorney throughout any trial, and if you

 5    could not afford to pay for a lawyer yourself, one would be

 6    appointed for you at taxpayers' expense; do you understand

 7    that?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Now, there are two ways in which a

10    case can be tried.  The first is to a judge alone, and we

11    call that a bench trial.  The second is to a jury in which

12    case 12 ordinary citizens are randomly brought together to

13    decide the case.  But in either type of trial, the burden is

14    the same at all times on the prosecution, and that is a

15    person cannot be found guilty unless the Government proves

16    guilt beyond a reasonable doubt; do you understand all that?

17              THE DEFENDANT:  I do.

18              THE COURT:  And with a jury trial, in order for a

19    jury to convict, all 12 jurors must agree with the decision.

20    So if just one juror had a reasonable doubt, that jury could

21    not convict.  It would be what we call a hung jury, we would

22    declare a mistrial, and there would be a new trial scheduled

23    with a new jury; do you understand that?

24              THE DEFENDANT:  I do.

25              THE COURT:  Now, if you continued with a not
```

 1  guilty plea, your counsel could try to attack the

 2  prosecution's case.  And I don't know if there are any

 3  grounds upon which that might be successful.  But, for

 4  example, if you gave a confession and you didn't get proper

 5  Miranda warnings or there were issues about compulsion, they

 6  might be able to file a motion to suppress that would keep

 7  that confession out.  There may or may not be issues about

 8  how you were brought to the United States.

 9          I have no idea what, if any, defenses you might

10  have, but what you need to appreciate is that by pleading

11  guilty, you give up any and all attacks on the prosecution's

12  case except for an attack on the jurisdiction of the Court,

13  because the issue of jurisdiction can be raised at any time;

14  do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And, lastly, if you pled not guilty

17  and you went to trial and you were found guilty at trial,

18  you could appeal that finding of guilt to a higher-level

19  court.

20          Do you understand that under the terms of your

21  plea agreement as I've explained them to you, as well as the

22  way the law is structured, in essence by pleading guilty,

23  you give up your right to appeal your conviction; do you

24  understand that?

25          THE DEFENDANT:  I do.

                                                              25

1          THE COURT:  Other than the plea agreement that's

2     in court today, in your view, has anybody put any force or

3     pressure on you to plead guilty today?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you feel that anybody has promised

6     you anything other than what's in this plea agreement?

7          THE DEFENDANT:  No.

8          THE COURT:  All right.  Now, the last document we

9     need to go over is the statement of facts.  The document is

10    nine pages long.  It's extremely long.  I've read it in

11    chambers, and I want to, first of all, make sure that I see

12    your signature again with yesterday's date on page 9.

13         Did you, in fact, sign the written statement of

14    facts?

15         THE DEFENDANT:  I did.

16         THE COURT:  All right.  And you signed it

17    yesterday?

18         THE DEFENDANT:  I did.

19         THE COURT:  Now, before you signed it, did you

20    carefully read over the 26 numbered paragraphs that are in

21    this statement of facts?

22         THE DEFENDANT:  Yes, I did.

23         THE COURT:  And do you understand that by signing

24    the statement of facts, you were doing two things.  One, you

25    are admitting to the truth of everything that's written in

                                                              26

```
 1    those 26 paragraphs; do you understand that?  And it's
 2    important -- this is an important issue, all right, because
 3    if there's a discrepancy between anything that's in the
 4    statement of facts, all right, and what you tell the
 5    probation office, there may be an issue about whether you'll
 6    get the credit for acceptance of responsibility.
 7             So this is your day in court.  If there's anything
 8    in this statement of facts with which you do not agree, you
 9    need to clarify the record now.  All right.
10             If you want to talk to your counsel for a second,
11    feel free to do so.
12                     (Pause.)
13             MR. KING:  Your Honor, the statement of facts has
14    been the product of significant negotiations between defense
15    counsel and the Government, and we wanted to make clear to
16    the Court, for instance in paragraph 4, second sentence.
17    And things like this appear in the statement of facts a few
18    times where paragraph 4 in the second sentence says:
19    "According to a witness with firsthand knowledge of the
20    move, Fluke-Ekren and her husband left Libya because at the
21    time they believed" -- and then it goes on to that, "Ansar
22    al-Sharia was no longer conducting attacks there, and they
23    wished to engage in violent jihad elsewhere."
24             The way that's phrased, we realize there is a
25    witness with firsthand knowledge who has testified to those
```

27

```
 1   facts, and so it's phrased in a way where it's -- that's a
 2   true statement as to her purpose in going there.  That may
 3   be an issue for the position on sentencing -- the ultimate
 4   sentencing.
 5             THE COURT:  Well, but let's look at paragraph 6,
 6   because I suspect that will play a significant part.  It
 7   says there:  "While residing in Syria, Fluke-Ekren told a
 8   witness" -- this is, again, I think the same Witness 1 --
 9   "about her desire to conduct an attack in the United States.
10             To conduct the attack, Fluke-Ekren explained that
11   she could go to a shopping mall in the United States, park a
12   vehicle full of explosives in the basement or parking garage
13   level of the structure, and detonate the explosives in the
14   vehicle with a cell-phone-triggering device."  I won't read
15   the rest of that paragraph.  That's a very strong statement.
16             Now, as I understand what you're telling the
17   Court, you're only admitting that a witness would say that
18   that's what the defendant told the witness or planned to do,
19   but the defendant's not actually admitting that she was
20   planning to do that; is that correct?
21                         (Pause.)
22             MR. KING:  Your Honor, there is no denial those
23   statements were made to that witness.
24             THE COURT:  There's no denial that those
25   statements were made to that witness?
```

28

```
 1              MR. KING:  Right.  That is correct, Your Honor.

 2    There may be an issue with context that will be provided at

 3    the time of sentencing.

 4              THE COURT:  All right.  It was not my plan to read

 5    this statement of facts into the record.  It has been signed

 6    by the defendant, and I think that is sufficient for these

 7    purposes.  As I said, I've read it carefully in chambers.

 8              So, again, other than that clarification, that

 9    statements made by witnesses may not necessarily be what the

10    defendant would agree to, all right, she doesn't disagree

11    that the statement was made by the witness, but there may be

12    some discrepancies or differences at the sentencing hearing,

13    that's what you're telling me, Mr. King?

14              MR. KING:  Yes, Your Honor.

15              THE COURT:  All right.  And the Government's

16    satisfied with that situation?

17              MR. PAREKH:  Just to be clear, Your Honor,

18    Mr. King just said that paragraph 6, Ms. Fluke-Ekren did

19    make those statements to the witness.

20              THE COURT:  Right.

21              MR. PAREKH:  So she's not denying that.  Obviously

22    the Court can ask her herself so that we have that on the

23    record.

24              And what Mr. King is referencing may just appear a

25    few times in the statement of facts, but the statement of
```

29

1  facts reads as though Fluke-Ekren is admitting that she told

2  these witnesses the statements that appear throughout the

3  statement of facts.

4          THE COURT:  All right.

5          MR. PAREKH:  And so paragraph 6 specifically says:

6  "While residing in Syria, Fluke-Ekren told a witness about

7  her desire to conduct an attack in the United States."

8          And so our position and our understanding is that

9  Fluke-Ekren is admitting today that she did make those

10  statements to a witness.

11          THE COURT:  All right.  Is that correct that you

12  do agree that you made those statements to that witness?  I

13  don't want to put words in your mouth.  This is your day in

14  court, so you need to clarify the record if you're

15  uncomfortable with the situation.

16          THE DEFENDANT:  Some of these statements were made

17  by a witness who was very young at the time, so I -- her

18  memory of exactly how the conversations were might not be

19  the same as mine.  But the essence of these conversations

20  I -- I agree that those conversations happened.

21          THE COURT:  All right.  Well, let me -- let's look

22  at paragraph 15.  All right.  It says there that in or

23  around mid 2016, you led and organized an effort to

24  establish a women's center in Raqqa, Syria; is that correct?

25          THE DEFENDANT:  I did.

                                                              30

1          THE COURT:  All right.  And that you informed a
2  witness, this is now Witness Number 4, among others, that
3  you had obtained authorization from the Wali, that is the
4  ISIS-appointed mayor of Raqqa, in order to establish this
5  center.  Did you make that statement?
6          THE DEFENDANT:  I did, yes.  It was like
7  permission from -- permission for a private venture.
8          THE COURT:  And had you, in fact, gotten such
9  permission?
10          THE DEFENDANT:  Yes.
11          THE COURT:  All right.  And then the center began
12  operations in Raqqa-based villa in or around October of
13  2016; is that correct?
14          THE DEFENDANT:  It is.
15          THE COURT:  And there you and others provided
16  medical services, educational services about the Islamic
17  State, child care and various training to women and young
18  girls; is that correct?
19          THE DEFENDANT:  Yes.
20          THE COURT:  The next sentence says:  "As the
21  center's leader, you also provided and assisted other female
22  ISIS members in providing training to numerous women and
23  young girls in the use of automatic firing AK47 assault
24  rifles, grenades and explosive suicide belts to defend
25  themselves against ISIS's enemies"; is that correct?

31

1          THE DEFENDANT:  Your Honor, just -- the only thing
2    I would say is that we didn't intentionally train any young
3    girls.  They may have been in attendance, but I can't --
4    but --
5          THE COURT:  Well, it says "women and young girls."
6    Are you disputing that you were training women with these
7    devices?
8          THE DEFENDANT:  No.
9          THE COURT:  You're not disputing that?
10         THE DEFENDANT:  No, I'm not.
11         THE COURT:  It's just the young girls that you're
12   disputing?
13         THE DEFENDANT:  I don't dispute it.  They could
14   have been there.  But -- yeah.
15         THE COURT:  All right.
16         MR. PAREKH:  Your Honor, just to provide a little
17   bit more context to that statement.
18         We've turned over grand jury transcripts where
19   these young girls, who were minors at the time, testified
20   under oath that they did, in fact, receive military training
21   from Ms. Fluke-Ekren.
22         In paragraph 21, just to provide additional
23   context for Your Honor, the defendant is admitting that over
24   100 women and young girls, including as young as 10 or
25   11 years old, received military training from Fluke-Ekren in
                                                              32

1    Syria on behalf of ISIS.  And we've turned over extensive

2    evidence indicating that, including grand jury testimony to

3    that effect.  And my understanding is that the defendant is

4    admitting to that statement, as well as the other statements

5    that Your Honor has read.

6              THE COURT:  Well, again, I mean, I want to make

7    sure the defendant -- this is her day in court.

8              Do you agree or disagree with what's written in

9    paragraph 21?  Because, again, you have signed the statement

10   of facts, and so above your signature -- if you look at

11   page 9 it says right above your signature:  "I hereby

12   stipulate that the above statement of facts is true and

13   accurate, and that had the matter proceeded to trial, the

14   United States would have proved the same beyond a reasonable

15   doubt."

16             So I want to make sure if you're disagreeing with

17   what is in here, that you made that record.

18             THE DEFENDANT:  Okay.

19                       (Pause.)

20             MR. KING:  Your Honor, Ms. Fluke-Ekren does agree

21   to the statement in the statement of facts, and I understand

22   the Court will want to hear from her.  And we intend on

23   providing additional context to these -- to the statement of

24   facts at the time of sentencing.

25             THE COURT:  All right.  Context is one thing, but

                                                            33

```
 1    disagreeing with it is a different problem.  All right.

 2              So, in other words, paragraph 21 does say over 100

 3    women and young girls, including some as young as 10 or

 4    11 years old, received military training from you in Syria

 5    on behalf of ISIS.

 6              Now, it may be that because you're described here

 7    as sort of the leader of this school or this program that it

 8    might have been one of your assistants who was doing the

 9    training.  You know, there is an agency concept in the law,

10    and I don't know whether the Government has evidence that

11    you, yourself, directly were training these younger people

12    or somebody working for you was doing it.  You'd still be

13    responsible for that as the leader.

14              THE DEFENDANT:  I understand.

15              THE COURT:  All right.  Is that closer to what you

16    think, Mr. King, when you say that you might have additional

17    information to clarify things?  I mean, how many instructors

18    were you talking about in the facility or in this school?

19    Were you the only one, or were there other people who were

20    instructing?

21              THE DEFENDANT:  There were others.

22              THE COURT:  There were others?

23              THE DEFENDANT:  Yeah.

24              THE COURT:  All right.

25              MR. PAREKH:  Your Honor --
```

34

1          THE COURT:  Is that consistent with the

2   Government's understanding, that there were other

3   instructors?

4          MR. PAREKH:  That is consistent.  But specifically

5   for paragraph 21, Your Honor, I personally have spoken to

6   individuals who were minors at the time who did receive this

7   military training from Fluke-Ekren herself, not other

8   instructors, but from Ms. Fluke-Ekren herself.

9          THE COURT:  All right.

10          Ma'am, I mean, this is -- again, you're creating

11   the record for this case.

12          THE DEFENDANT:  Uh-huh.

13          THE COURT:  Are you agreeing or disagreeing with

14   the statement that you, yourself, were involved in

15   instructing some people as young as 10 or 11?

16          THE DEFENDANT:  I agree with that.

17          THE COURT:  All right.  Now, do you understand

18   that if the Court accepts your guilty plea today, there will

19   be no trial of this case and you'll be found guilty today?

20          THE DEFENDANT:  I understand.

21          THE COURT:  Do you claim in any respect that

22   you're innocent of the charge?

23          THE DEFENDANT:  No.

24          THE COURT:  How then do you want to plead, guilty

25   or not guilty?

                                                          35

1          THE DEFENDANT:  I -- this is an accurate

2     statement.  I'm guilty of what's here.

3          THE COURT:  All right.  Counsel, have you had

4     enough time to go over this guilty plea with your client?

5          MR. KING:  Yes, Your Honor.

6          THE COURT:  Are you satisfied that the defendant

7     has entered her plea in a knowing and voluntary fashion?

8          MR. KING:  Yes, Your Honor.

9          THE COURT:  I know the defendant has quite a few

10    children.  Is there anything that you feel, any sense of

11    pressure the defendant might be feeling from her separation

12    from her children that may have led her to plead guilty?

13    Because I want to make sure the defendant is pleading guilty

14    because she believes that she is guilty, and she's admitting

15    that guilt and not for some external reason; all right?

16          So you've worked with her for several months.  I

17    want to know from the standpoint of counsel, do you believe

18    that the defendant has entered her plea in a completely

19    voluntary and knowing fashion?

20          MR. KING:  Yes, Your Honor, I do.

21          THE COURT:  All right.  And are you satisfied that

22    the guilty plea fully accords with your understanding of the

23    facts and circumstances?

24          MR. KING:  Yes, Your Honor.

25          THE COURT:  All right.  Then based on all of these

                                                              36

1  answers to the Court's questions, Ms. Fluke-Ekren, the Court

2  is finding you guilty of the offense.  I'm fully satisfied

3  that you've entered your guilty plea in a knowing and

4  voluntary fashion.  You're obviously a well-educated woman,

5  and I'm satisfied, although I understand this is an

6  emotional decision for you, that this has been a voluntary

7  and knowing entry of a guilty plea.

8        I'm also fully satisfied you've had the advice of

9  two experienced and competent counsel, and I'm satisfied

10 that the written statement of facts, which, again, I have

11 read completely in chambers, and what you have admitted to

12 in court today is more than enough evidence upon which to

13 find you guilty of the offense.  Therefore, the plea is

14 accepted, you're found guilty, and we need to set this case

15 for sentencing.

16        In terms of sentencing, we're into September.  How

17 is September 13 for everybody?  That is a Tuesday.

18        MR. KING:  Your Honor, defense counsel did discuss

19 with the Government, and defense counsel does have an

20 ongoing mitigation investigation which we believe is -- it

21 would take a significant amount of time, and there are a

22 number of witnesses still left to talk to and some other

23 things that we want to work through with Ms. Ekren.

24        We've discussed with the Government an October

25 date, if that would be available to the Court.

                                                          37

```
 1              THE COURT:  I don't mind giving it to you now, but
 2    there is a possibility that I may have to be out of the
 3    country, and I'm not going to get those dates for some time
 4    yet.  So we can set it in October.  It may have to shift;
 5    all right?
 6              MR. KING:  Thank you, Your Honor.
 7              THE COURT:  Tuesday, October 4.  Does that work?
 8              MR. KING:  Your Honor, we did discuss the week of
 9    October the 24th.  That was available to the Government and
10    also Mr. Sherlock.
11              THE COURT:  So that would be Tuesday, October 25.
12    Again, as soon as I know about this situation, I'll let you
13    know, but -- all right.  9:00 on Tuesday, October 25.
14              All right.  Now, Ms. Fluke-Ekren, you're going to
15    be visited in your cell by a federal probation officer who
16    will conduct a background investigation, and your full
17    cooperation with the officer is to your advantage.  You are
18    getting credit for the time you've been in custody against
19    your final sentence; do you understand that?
20              THE DEFENDANT:  Yes, I do.
21              THE COURT:  All right.  Is there anything further
22    we need to address with this case?
23              MR. PAREKH:  Your Honor, just a few housekeeping
24    matters.
25              THE COURT:  Yes.
```

38

1              MR. PAREKH:  I'll be brief.  It won't take more

2     than a few minutes.

3              First, I want to thank Your Honor and your

4     chambers staff and your courtroom staff for accommodating us

5     today.  And since we won't be before the Court again until

6     sentencing, I just wanted to raise a few issues, more just

7     for planning and situational awareness purposes.

8              I have been in contact with the defendant's

9     Kansas-based family members about this case, including

10    leading up to today's plea hearing to keep them updated and

11    ensure that their voices are heard.

12             You know, one of them told me recently that the

13    defendant has left a trail of betrayal, that they were

14    repeatedly victimized by this defendant.  And what I'm

15    getting at here, Your Honor, is that one or more of her

16    family members have requested me to tell the Court today

17    that they may travel here for the sentencing hearing and

18    request an opportunity to address the Court in person to

19    provide additional information beyond what is included in

20    the statement of facts.

21             Obviously this is a unique case.  It's the first

22    prosecution in the United States of a female ISIS military

23    battalion leader.  And so we respectfully ask the Court to

24    allow them to do so given the sui generis nature of this

25    case, and consider that request from the family members.

                                                              39

1          THE COURT:  I think you can prepare statements

2    from them, but it's not this Court's practice, other than a

3    true victim of a defendant's conduct, and there's nothing

4    about domestic conduct that's in the statement of facts.

5          So you can advise them, like any other person who

6    has an interest in a criminal case, that they can certainly

7    file written materials, which we will certainly consider.

8    It would also be made part of the presentence report if they

9    write and send it to the probation office.  But I don't

10   intend to have that type of testimony in a sentencing

11   hearing in my court.

12         MR. PAREKH:  Thank you, Your Honor.

13         And I've explained it to them.  At least one of

14   them -- I want to respect their privacy interests, but at

15   least one of them, I think we have a good-faith argument

16   that they were victimized by the defendant as a result of

17   the conduct.  So the sentencing hearing may be a little bit

18   lengthier, and I just mention that --

19         THE COURT:  Well, make a motion and we'll see, and

20   defense counsel have a right to respond to it.  But I'm

21   giving you my thoughts about that now.

22         MR. PAREKH:  Understood, Your Honor.

23         And then separately, you know, as the plea

24   documents indicate, you know, our sprawling investigation

25   has uncovered numerous women and young girls who received

                                                          40

 1    training from this defendant on behalf of ISIS.  They, too,

 2    are considering -- some of them, obviously not -- the

 3    defendant has admitted to over 100.  We're not talking about

 4    that kind of number, but some of them may wish an

 5    opportunity to address the Court because, you know, we would

 6    argue that they've -- this is lifelong trauma and pain that

 7    has been inflicted upon them by this defendant as a result

 8    of what they had to go through.  Particularly minors to have

 9    to go through this type of experience in Syria in a war

10    zone, and so I just wanted to raise that for the Court ahead

11    of time.

12           THE COURT:  If they're genuine victims then of

13    course under the statute they have a right to be heard, and

14    we always invite that.  That's a different situation than

15    the first one.

16           MR. PAREKH:  Thank you, Your Honor.

17           THE COURT:  All right.

18           MR. PAREKH:  And the last housekeeping matter is,

19    as Mr. King referenced, we have provided extensive discovery

20    in this case.  Some of that discovery has been in the form

21    of audio recordings, multimedia.  I know it's Your Honor's

22    practice to often receive those in chambers, provide a copy

23    to defense counsel.  But in this case, would Your Honor

24    consider allowing us to play some of those materials at the

25    sentencing hearing so we could provide context for it?  And

                                                               41

```
 1   it could be quite impactful, we would argue, for the Court
 2   to hear that.
 3              THE COURT:  I'd have to look at the material first
 4   before giving you an answer on that.
 5              MR. PAREKH:  Understood.
 6              THE COURT:  And, again, defense counsel have an
 7   objection, so you need to put all of that in some formal
 8   writing so that defense counsel has an ability to look at it
 9   as well; all right?
10              MR. PAREKH:  I will do that.
11              MR. KING:  Thank you, Your Honor.
12              MR. PAREKH:  Thank you, Your Honor.
13              THE COURT:  All right.  Anything further?
14              MR. PAREKH:  Nothing further from the Government,
15   Your Honor.
16              THE COURT:  All right.  Then the defendant is
17   remanded, and we will recess court for the day.
18              (Proceedings adjourned at 12:14 p.m.)
19              ----------------------------------
20   I certify that the foregoing is a true and accurate
21   transcription of my stenographic notes.
22
23   _____
24              Stephanie M. Austin, RPR, CRR
25
```

42