**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | Case No. 1:22-cr-92 |
| | : | |
| ALLISON ELIZABETH FLUKE-EKREN, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT ALLISON ELIZABETH FLUKE-EKREN'S
### REDACTED MOTION FOR RELEASE PENDING SENTENCING

Comes Now the Defendant, Allison Elizabeth Fluke-Ekren, by counsel, and requests the Court grant her release pending sentencing in this matter.[1]

On June 7, 2022, the Defendant pled guilty to one count of conspiring to provide material support to a designated terrorist organization in violation of Title 18, United States Code, Section 2339B. Sentencing is set for October 25, 2022. Ms. Fluke-Ekren is requesting that the Court, pursuant to 18 USC § 3145(c), grant her release pending sentencing so that she can have meaningful contact with and assist in obtaining suitable placement for her six minor children, who are currently in foster care through the Loudoun County Department of Family Services. If released, she would reside at the townhome of A.C. in Springfield, Virginia.[2] She is willing to comply with any release conditions the Court would see fit to impose on her, including but not limited to house arrest with GPS monitoring.

---

[1] Pursuant to the Court's Order of August 15, 2022, the Defendant hereby files this redacted Motion for Release Pending Sentencing.
[2] The name, address, and phone number of the Defendant's proposed third-party custodian, A.C., has been provided to the government and U.S. probation by undersigned counsel at the time this Motion was filed.

1

# ARGUMENT

The Defendant now stands convicted of a violation of 18 USC § 2339B. Accordingly, the Defendant's continued detention, pending sentencing, is mandated[3] unless (1) the Court finds by clear and convincing evidence that the Defendant is not likely to flee or pose a danger to the safety of any other person or the community if released,[4] and (2) it is clearly shown that there are exceptional reasons why the Defendant's continued detention would not be appropriate.[5] For the reasons below the Defendant is not likely to flee, does not pose a danger to any person, and there are exceptional reasons which merit her release – under appropriate conditions – pending sentencing.

## 1. Standard for Release Pending Sentencing

The applicable standard for release of Ms. Fluke-Ekren pending sentencing is set forth in two statutes. First, 18 USC § 3143, which governs release pending sentencing or appeal, states, in pertinent part:

> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—
>
> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 USC § 3143(a)(2). The Defendant concedes that her conviction is for an offense that falls within the enumerated offenses in 18 USC § 3142, and that she cannot satisfy either condition set

---

[3] 18 U.S.C.A. § 3143(a)(2).
[4] 18 U.S.C.A. § 3143(a)(1).
[5] 18 U.S.C.A. § 3145(c).

forth in § 3143(a)(2)(A)(i) or (ii); therefore, she is subject to mandatory detention pursuant to § 3143(a)(2).

Notwithstanding the mandate of 18 USC § 3143(a)(2), this Court has the authority to release the Defendant pending sentencing pursuant to 18 USC § 3145, which states, in pertinent part:

> A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

18 USC § 3145(c). This section authorizes a district court to release a defendant pending sentencing, even where mandatory detention under § 3143(a)(2) applies. *See United States v. Goforth*, 546 F.3d 712 (4th Cir. 2008) (holding that a district court judge is a "judicial officer" within the meaning of 18 USC § 3145, thereby authorized to release a defendant otherwise subject to mandatory detention pursuant to § 3142(a)(2), upon a showing of "exceptional reasons").

The Defendant is subject to detention pursuant to § 3143(a)(2); therefore, the Court has the authority, pursuant to § 3145(c), to release her pending sentencing, upon satisfaction of two conditions. First, she must meet the "conditions of release set forth in section 3143(a)(1)," which itself requires "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released."[6] Second, it must be "clearly shown

---

[6] *See* 18 USC § 3143(a)(1):
  Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, <u>unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released</u> under section 3142(b) or (c). (emphasis added).

that there are exceptional reasons why such person's detention would not be appropriate."[7] For the reasons set forth below, Ms. Fluke-Ekren satisfies both conditions for release.

2. **The Defendant Does Not Pose a Flight Risk or Danger to the Public**

First, the circumstances of how Ms. Fluke-Ekren came to be in custody demonstrate that she is not a flight risk. While the Defendant has been in United States' custody since January 28, 2022, her present incarceration actually dates back approximately fourteen months to when she was taken into custody by local Syrian authorities in the summer of 2021. Statement of Facts (hereinafter "SOF"), ECF 36 at ¶¶ 23, 24. Ms. Fluke-Ekren was detained at that time because she voluntarily went to a local police station, identified herself as an American citizen, and attempted to turn herself in. SOF ¶ 23. Approximately two weeks after her visit to the local police station, Mr. Fluke-Ekren was taken into custody along with her six minor children. She was transferred to a detention facility inside Syria and remained in custody with her children until she was flown back to the United States, landing at Dulles International Airport on January 28, 2022. Upon arriving at Dulles, the Defendant's children were transferred to the custody of the Loudoun County Department of Family Services and the Defendant was brought to the Alexandria Detention Center.

When Ms. Fluke-Ekren brought herself to the attention of Syrian authorities, she was fully aware that she was likely wanted by the United States and would be exposed to a prison sentence; however, she was motivated by a desire to protect her children from the difficulties of living in war-torn Syria and wanted them to have a better life. The fact that she essentially turned herself in demonstrates that she does not pose a risk of flight.

---

[7] 18 USC § 1345(c).

4

Ms. Fluke-Ekren's desire to secure a better life for her children is the primary reason that she now seeks release pending sentencing, and it is also the most compelling reason she has not to attempt to flee if released. Her children, between the ages of 2 and 9, have been in foster care for seven months in three separate homes. In foster care, it is the Defendant's information that one child developed pneumonia, one was treated at the hospital for a concussion, and one child was given emergency treatment for an allergic episode. In addition, three children have developed bed-wetting and night terrors and another child consistently breaks down sobbing during video visits asking to come back to her mother.

The Defendant has had limited contact with her children during her incarceration in Alexandria. That contact has consisted of some phone calls and weekly video visits conducted from the jail. Unfortunately, as of this week, her video visits with her children have been suspended—apparently due to jail staffing issues. This new development is of great concern to the Defendant, and is no doubt painful and distressing to her children. The Defendant has a well-founded belief that the children would benefit enormously from having more, and more meaningful, contact with their mother at this critical time as they attempt to integrate into a new culture. It is no exaggeration to say that there is nothing more important to Ms. Fluke-Ekren than her children and it is hard to imagine a more compelling motive for her to not flee, or do anything that could jeopardize that contact, if she is released to bond.

Regarding danger to the community, the Defendant's actions resulting in her prosecution, in partial mitigation, occurred under extraordinary circumstances in a war zone more than four years ago. Her motive in providing weapons training in Syria was to provide self-defense training for women in a dangerous environment in which women and children had been sexually assaulted

and raped by the warring factions,[8] not to launch attacks against civilian targets.  *See also* SOF, ¶¶ 15, 17. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  The fact that Ms. Fluke-Ekren provided defensive training to women in a war zone that ISIS leadership never intended to use hardly indicates that the Defendant would be a danger to the community if released now, and subject to conditions.

---

[8] *See e.g. Thousands of women, men, children raped in Syria's war: U.N. report*, Reuters, March 15, 2018, available at https://www.reuters.com/article/us-mideast-crisis-syria-warcrimes-sexual/thousands-of-women-men-children-raped-in-syrias-war-u-n-report-idUSKCN1GR1PZ (last accessed August 11, 2022, at 8:00PM EDT).
████████████████████████

From March 2011 to March, 2021 there were over 140,000 documented civilian deaths in Syria.[14] Many deaths resulted from bombings and airstrikes in civilian-populated areas.[15] While the extent to which U.S. or U.S.-led coalition forces were responsible for such deaths remains a matter of some controversy,[16] the belief that such forces were responsible for civilian deaths was widespread in Syria during the time Ms. Fluke-Ekren lived there.

Ms. Fluke-Ekren experienced, first-hand, the devastation and carnage caused by these attacks on civilian-populated areas. In 2015 one of her children was killed, and another severely injured, from such an attack on a residential neighborhood. She saw numerous friends, neighbors, and children killed in similar incidents during the war. The government will, no doubt, highlight statements the Defendant made, while living in Syria, indicating her approval of attacks on the United States, as evidence of her dangerousness. While the Defendant acknowledges such conversations took place, they were exclamations made in the midst of, and in response to, the shock and horrors of war. Ms. Fluke-Ekren never acted to carry out any such attacks, and ultimately chose to abandon any involvement with ISIS in May of 2019 (SOF ¶ 23).

### *Life After ISIS (Spring 2019 – present)*

Subsequent to abandoning her involvement with ISIS, Ms. Fluke-Ekren lived with her family primarily in Qobassin, Syria, where she devoted herself to caring for her children and helping her community. She re-married, worked as a data collector for an NGO,[17] and served as a

---

[14] Rep. of the U.N. High Commissioner for Human Rights, 50th Sess., June 13–July 8, 2022, ¶ 23, U.N. Doc. A/HRC/50/68 (June 28, 2022). The total number of civilians killed in the conflict is unknown, but is reliably estimated to exceed 300,000. *Id.*, ¶ 24.
[15] *Id.*, ¶ 21.
[16] *See, e.g.*, Dave Philipps and Eric Schmitt, *How the U.S. Hid an Airstrike That Killed Dozens of Civilians in Syria*, N.Y. Times, Nov. 14, 2021 (updated Nov. 15, 2021), https://www.nytimes.com/2021/11/13/us/us-airstrikes-civilian-deaths.html.
[17] Mr. Fluke-Ekren was employed by the Needs Assessment Society for Syria (NASS). NASS provided data on migration and humanitarian issues to the World Health Organization. She was paid $420 per month.

7



A child learning at the school Ms. Fluke-Ekren helped build in Qobassin.
(the faces of the children have been obscured to protect their privacy)



Ms. Fluke-Ekren's students. The desks and benches in the photographs were contributed by the Qobassin city council.
(the faces of the children have been obscured to protect their privacy)

school teacher. Ms. Fluke-Ekren personally contributed to building a two-room schoolhouse[18] that served approximately 50 children ranging in age from preschoolers to teenagers. The schoolhouse opened in January 2020 and replaced a gravel floor tent that had served as the prior school. Ms. Fluke-Ekren taught English and Arabic writing at the school, which her own children attended, for no salary. She also worked with the city council in Qobassin to obtain desks, benches, supplies, and two full-time teachers for the school. She used her own money to purchase books and supplies for the students and developed a curriculum to assist other teachers. Her life after leaving ISIS reflects her disavowal of violence, and demonstrates that if released pending sentencing she will not pose a danger.

---

[18] In fact, the school stands on land owned by her then-husband who bought the cinder blocks to construct the school.

### 3. Exceptional Reasons Exist which Merit the Defendant's Release Pending Sentencing

While it would appear that the Fourth Circuit has not interpreted the phrase "exceptional reasons" as used in § 3145(c), other Circuits have. For example, the Eighth Circuit has explained that "'exceptional' means 'clearly out of the ordinary, uncommon, or rare.'" *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007) (internal citations omitted). The Ninth Circuit has interpreted the phrase to mean something "out of the ordinary, uncommon or rare." *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993). And the Second Circuit has described "exceptional reasons" as a "unique combination of circumstances giving rise to situations that are out of the ordinary," "a most unusual factual and legal situation," an "unusual legal or factual question," and "the presence of one or more remarkable and uncommon factors.". *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). The exceptional reasons "safety valve" is a flexible standard which "permits courts to respond to real-world circumstances in a pragmatic and common-sense manner." *United States v. Harris*, 451 F. Supp. 3d 64, 71 (D.D.C. 2020)

Ms. Fluke-Ekren's six children were taken into custody with her and remained in custody until they were transferred to the custody of the Loudoun County Department of Family Services upon their arrival in the United States. Five of the six children are United States citizens, although they have never lived in the United States until they were brought here in 2022.[19] The fact the children are in the United States, without family, is an exceptional circumstance in favor of releasing the Defendant pending sentencing. Without their mother, these children are essentially orphans. Certainly, such a situation is "out of the ordinary, uncommon, or rare."

After her incarceration by the United States, Ms. Fluke-Ekren expressed her desire that the children be placed with her in-laws and her son in Turkey, where she believed they would be safe

---

[19] The one child who is not a U.S. citizen was adopted by Ms. Fluke-Ekren when he was seven-months old, after both his parents were killed.

9

and well-cared for, in a more familiar environment. Instead, the Government brought these young children to the United States – a land and culture entirely foreign to them. If Ms. Fluke-Ekren is released pending sentencing she will be able to assist her children in better adjusting to this new environment, and most importantly, will be able to facilitate her children finding stable and appropriate caregivers.

Courts have recognized similar circumstances involving defendants' needs to care for their minor children as constituting "exceptional reasons" under § 3145(c). *See, e.g.*, *United States v. Hooks*, 330 F. Supp. 2d 1311, 1312-14 (M.D. Ala. 2004) (finding "exceptional reasons" and thus granting bail to a woman "so as to allow her to make provisions for the care of her three minor children"); *United States v. Chen*, 257 F.Supp. 2d 656, 664 n.30 (S.D.N.Y. 2003) (describing a situation in which the court felt tempted to use the "exceptional reasons" exception because the "defendant [was] married and the father of a very young child"); *United States v. Sabhnani*, 529 F. Supp2d 377, 383 (E.D.N.Y. 2007) (finding "exceptional reasons" warranting release pending sentencing because convicted person "is solely responsible for operating his business" and needed time to arrange care for his four children and wind down his family's financial affairs); *United States v. Rentas,* No. 09 CR 555(HB), 2009 WL 3444943, at *2 (S.D.N.Y. Oct. 26, 2009) (finding that "exceptional reasons" were present when defendant was a "long-time employee, non-violent with no significant prior record, ha[d] demonstrated her willingness to comply with release conditions, ha[d] cooperated with the government, and [was] a single-mother with a child with medical issues").

Should the Court grant Ms. Fluke-Ekren's release pending sentencing, she would likely be able to have in-person (supervised) visitation with the children. Of course this will be beneficial for Ms. Fluke-Ekren; but more importantly, it will greatly benefit the children, as they attempt to

assimilate into a strange new environment. Even a short period of meaningful physical contact with their mother would have an enormous beneficial impact on these young children at this critical time in their lives.

WHEREFORE, the Defendant respectfully requests the Court grant her release pending sentencing in this matter, subject to whatever conditions the Court deems appropriate.

Respectfully submitted,

\_\_\_\_\_/s/_____
Sean A. Sherlock (VSB# 82633)
Joseph King (VSB# 65632)
King, Campbell, Poretz & Mitchell PLLC
118 N. Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
Fax: (703) 652-6010
sean@kingcampbell.com
jking@kingcampbell.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via ECF and thereby forwarded to all counsel of record on this 15th day of August 2022.

\_\_\_\_\_/s/_____
Sean A. Sherlock (VSB# 82633)
Joseph King (VSB# 65632)
King, Campbell, Poretz & Mitchell PLLC
118 N. Alfred Street
Alexandria, Virginia 22314
(703) 683-7070
Fax: (703) 652-6010
sean@kingcampbell.com
jking@kingcampbell.com