IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:22-cr-92 |
| ALLISON FLUKE-EKREN, | ) | |
| a/k/a "Allison Ekren," | ) | Hon. Leonie M. Brinkema |
| a/k/a "Umm Mohammed al-Amriki," | ) | |
| a/k/a "Umm Mohammed," | ) | Sentencing: November 1, 2022 |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' MEMORANDUM TO AID THE COURT'S REVIEW OF
THE DEFENDANT'S OBJECTIONS TO THE PSR**

On October 19, 2022, Allison Fluke-Ekren (the "defendant" or "Fluke-Ekren"), through

her counsel, submitted numerous objections to her Presentence Investigation Report ("PSR")

prepared by the U.S. Probation Office.  *See* Dkt. No. 53.  The government is prepared to address

these objections at the upcoming sentencing hearing, but offers this memorandum to assist in

streamlining the forthcoming arguments.  This memorandum is not intended to serve as a reply

to Fluke-Ekren's § 3553(a) arguments.  Rather, these responses to Fluke-Ekren's PSR objections

are being submitted in advance of the sentencing hearing for efficiency purposes, as the

government did not have any objections to the final PSR, and to reserve the bulk of its

presentation on sentencing arguments.  Defense counsel was informed of this memorandum and

does not object to its filing.

### A.  Response to Fluke-Ekren's General PSR Objections

To be clear, the government recognizes that the Court has an overwhelming amount of

evidence set forth in the nine-page Statement of Facts upon which it can impose the statutory

maximum sentence in this case.  As such, undersigned counsel's forthcoming sentencing

argument will focus on the breadth, scope, and egregious nature of the terrorism-related conduct to which Fluke-Ekren has been found guilty.  *See* Dkt. 50 at 1.

The government concurs with the U.S. Probation Office's response to Fluke-Ekren's general PSR objections: "Given the totality of the evidence gathered, and the overall consistency among the statements made by [Fluke-Ekren's abused children], the probation office believes the information is sufficiently reliable for the Court's consideration of the personal history and characteristics of the defendant, pursuant to 18 U.S.C. § 3553(a)."  The Fourth Circuit has made clear that "a district court may consider criminal activity of a defendant that was not relevant conduct as part of the history of the defendant."  *United States v. Fernandez*, 581 F. App'x 221, 224 (4th Cir. 2014) (citing *United States v. Rhine*, 637 F.3d 525, 528-29 (5th Cir. 2011)).

As the government previously stated, it is well-known to courts, probation officers, and those who have worked on cases involving this subject matter, that speaking about the horrors of being physically and sexually abused is extremely difficult for any victim—especially for a child who has been abused by his/her own parent.  The Court will have the opportunity to assess the demeanor and credibility of Fluke-Ekren's daughter during her victim allocution.  Fluke-Ekren's son intends to attend the sentencing hearing and he is also available to answer any questions the Court may have on that day, if deemed necessary.  The Court can take this information into account when deciding how much weight, if any, to afford Fluke-Ekren's self-serving "mitigation" arguments and uncorroborated claims of her conditions in Syria.

Furthermore, the defense has had the September 2022 interview reports for over six weeks.  Fluke-Ekren has not asked the Court for a continuance of the sentencing hearing.  In contrast, the defense only recently submitted a psychological report with its filed sentencing memorandum.  Unlike the government's reports, this information was not provided to the U.S.

Probation Officer.  The defense did not submit any objections to the "Mental and Emotional Health" section of the PSR (*see* ¶ 135), nor did they advise the U.S. Probation Officer that this report may be forthcoming.  Similarly, the government did not receive any advance notice of this diagnosis, and the defense has declined to share any of the underlying non-privileged notes and data that led to this conclusion.  Additionally, as listed on page two of their report, nearly all of the September 2022 interview statements from Fluke-Ekren's children and other family members that are included in the PSR to which Fluke-Ekren objects were considered as part of the PTSD diagnosis.  Moreover, if Fluke-Ekren is exhibiting any such symptoms, it is the direct consequence of her voluntary choices, including joining multiple terrorist organizations, aspiring to commit attacks, training over 100 women and young girls to kill, and moving her children across multiple war zones while evading detection and capture for over a decade.

As it relates to family members who wish to describe "domestic conduct" (and, impliedly, Fluke-Ekren's pre-ISIS conduct), the Court stated that the government "can advise them, like any other person who has an interest in a criminal case, that they can certainly file written materials, which we will certainly consider.  It would also be made part of the presentence report if they write and send it to the probation office."  Dkt. No. at 40.  Fluke-Ekren's daughter and son should be acknowledged for having the courage to come forward about these excruciatingly painful experiences, rather than casting doubt on their statements, which could lead to an unintended chilling effect for other abused children who learn about this case now or in the future.[1]  Given that the sentencing hearing arguments from counsel will focus on

---

[1] *Cf. Kenna v. U.S. Dist. Ct. for C.D. Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) (quoting Jayne W. Barnard, *Allocution for Victims of Economic Crimes*, 77 Notre Dame L. Rev. 39, 41 (2001) (The statutory aims of the Crime Victims' Rights Act (CVRA) include: "(1) To ensure that the district court doesn't discount the impact of the crime on the victims; (2) to force the defendant to confront the human cost of his crime; and (3) to allow the victim 'to regain a sense of dignity

the terrorism-related conduct to which Fluke-Ekren has pleaded guilty, there is no need to further litigate these general objections to the PSR at the hearing.

### B.  Response to Fluke-Ekren's Specific PSR Objections

**Paragraphs 40-44**: The defense received this interview report on September 27, 2022. The parties' objections to the PSR were not due until October 7, 2022, but at the defense's request, the U.S. Probation Office graciously extended the deadline to October 11, 2022. Irrespective of the timing, the PSR makes clear that these are statements from Fluke-Ekren's daughter—an eyewitness to her mother's terrorist acts.  Given Fluke-Ekren's attempts to minimize her conduct, including outlandish claims about her "motives" (*see* Dkt. No. 55 at 24-25), the statements in these paragraphs provide the Court with a more complete picture of Fluke-Ekren's actions and intent.  The government does not object to including a footnote, as the PSR does in other sections, stating that the defendant disagrees with her daughter's statements.

**Paragraphs 45-48, and 50**: Regarding paragraph 45, the government does not object to stating that this witness (a former ISIS member who traveled from Central America to Syria) stayed in an adjoining residence to Fluke-Ekren for approximately 18 days.  The information contained in paragraphs 46-48 of the PSR is based on an interview with the witness in which the U.S. Probation Officer participated with undersigned counsel and the FBI on July 26, 2022.  The defense received a copy of this report months ago.  This witness has consistently stated in all three interviews that Fluke-Ekren attempted to recruit her to commit an attack involving the use of explosives on the campus of a U.S.-based college in the Midwest, which is accurately

---

and respect rather than feeling powerless and ashamed.'").  Moreover, "[t]here may be therapeutic aspects to a victim giving a victim impact statement.  And, if the judge acknowledges what the victim has said in the statement, the judge's words can be (as one victim put it) 'balm for her soul.'"  Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. 611, 621–22 (2009).

reflected in paragraph eight of the Statement of Facts.  The remaining information in the PSR provides additional details about Fluke-Ekren's attack plot and intentions, which is directly relevant to the ISIS-related conduct to which she has pleaded guilty.

Regarding paragraph 50 of the PSR, the defense has been repeatedly informed about the known and located victims in this case, including through several discovery productions from February 2022 and beyond, meetings with undersigned counsel, and through court filings.  As stated in the government's CVRA motion: "Certain victims of the offense (*i.e.*, those who were forced to undergo terrorist training by Fluke-Ekren when they were young children; adults who voluntarily chose to receive ISIS training from Fluke-Ekren are, of course, co-conspirators rather than victims) informed undersigned counsel that they do not intend to address the Court.  These victims wish to remain anonymous to the public and are, understandably, intensely afraid of Fluke-Ekren and severely traumatized by her chilling conduct." Dkt. No. 47 at 7.[2]

**Paragraph 54**: The government is not seeking this Guidelines adjustment.  Nonetheless, as reflected on pages 22-26 of the government's sentencing memorandum, the Court can take into account Fluke-Ekren's obstructive conduct in its sentencing determination.  Fluke-Ekren's sworn statement to this Court on June 7, 2022 that she "didn't intentionally train any young girls" (which she corrected later during the hearing after being reminded that multiple minors testified as such in the grand jury, and the Court will soon hear from her own daughter whom she intentionally trained); her attempt to mislead the U.S. Probation Officer; her repeated lies to the FBI during her January 2022 Mirandized interview; and her recorded phone calls while she was evading law enforcement detection last year in Syria, among other examples, provide the Court

---

[2] As stated during the plea hearing, the government has "turned over [to the defense] grand jury transcripts where these young girls, who were minors at the time, testified under oath that they did, in fact, receive military training from Ms. Fluke-Ekren."  Dkt. No. 37 at 32.

with ample reasons to doubt the veracity of Fluke-Ekren's "mitigation" arguments and denials.[3]

**Paragraph 84**: The PSR specifically notes that these are statements from Fluke-Ekren's first husband.  It is no different than the PSR containing statements attributed to Fluke-Ekren about her personal history and characteristics.  If Fluke-Ekren's self-serving and uncorroborated statements about her background are included in the PSR, there is no reason to exclude corroborated statements from her family members and other witnesses.  Moreover, Fluke-Ekren characterizes her first husband's statements as "mudslinging," yet in the same memorandum, she insults the character of her parents, including referring to her father as "fake."

**Paragraph 101**: It is shocking, offensive, and cruel for Fluke-Ekren to claim that her daughter "chose" to get married to an ISIS fighter when she was 13-years-old.  Fluke-Ekren was her only living parent at that point (her second husband—the father of Witness-1—was deceased).  It was Fluke-Ekren's duty to protect the safety and well-being of her daughter. Instead, Fluke-Ekren forced her daughter to marry an ISIS fighter following her second husband's death to gain political leverage within ISIS in furtherance of her battalion-related goals.  Fluke-Ekren's daughter will discuss this further during her victim allocution, as it is directly related to the ISIS-related conspiracy to which Fluke-Ekren has pleaded guilty. Additionally, Fluke-Ekren's daughter has repeatedly stated that this individual was 17-years-old

---

[3] The January 4, January 21, and January 24, 2021 phone call excerpts between Fluke-Ekren (who was in Syria at the time) and her daughter (who voluntarily recorded her from the United States), all of which are cited in the government's sentencing memorandum (*see* Dkt. No. 56 at 23-25) are being delivered to the Court today on a disc.  These recordings were provided to defense counsel over seven months ago.  During the plea hearing, the Court indicated that it would review any recordings *in camera* first to determine whether the government would be permitted to play them during the sentencing hearing.  *See* Dkt. 37 at 41-42.  The first recording is one minute and 35 seconds, the second recording is 18 seconds, and the third recording is seven minutes and 44 seconds.  At sentencing, the government seeks to play the first two recordings in full given their short duration, and the final approximately 4 ½ minutes of the third recording, to explain their significance in connection with the § 3553(a) factors.

at the time and she was 13-years-old.

**Paragraph 113**: This is immaterial and need not be further litigated, but it is yet another questionable statement by Fluke-Ekren.  The PSR notes that Fluke-Ekren did not meet her current U.S.-based "husband" (whom she claims to have married through the Internet) "in-person" until June 15, 2022.  In "April/early May 2021," she was still in Syria and had not yet even been captured, and could not have met this individual in-person at that point.

**Paragraphs 115-126 and the two letters submitted to the Court**: Same response set forth to Fluke-Ekren's General PSR Objections (*supra* pages 1-2).

**Paragraph 115**: The PSR does not reference an April 11, 2007 accident report.  Rather, it clearly states that Fluke-Ekren "often locked [her son] in tight spaces—such as closets or the trunks of cars—for long periods of time, often long enough that [he] would urinate or defecate on himself."  Moreover, "trunk" can certainly refer to the enclosed rear cargo area of a vehicle.  And, according to Fluke-Ekren's son, Fluke-Ekren sometimes drove her second husband's vehicle, which was a sedan.  This is yet another attempt by Fluke-Ekren to elicit a response from the Court that her children should not be believed, notwithstanding the fact that many of their statements have been corroborated by others, including Fluke-Ekren's parents.

**Paragraph 116**: The PSR specifically notes that these are statements from Fluke-Ekren's son.  It is no different than the PSR including statements attributed to Fluke-Ekren about her personal history and characteristics.

**Paragraph 117**: Same response set forth directly above.

**Paragraph 118**: Fluke-Ekren's negative characterization about her son's statements are inaccurate.  The information from this paragraph is merely a summary from an FBI interview report.  His September 19, 2022 letter to the Court speaks for itself.

**Paragraph 119**: The PSR specifically notes that these are statements from Fluke-Ekren's son.  It is no different than the PSR including statements attributed to Fluke-Ekren about her personal history and characteristics.

**Paragraph 120 to 126**: Same response set forth directly above.

**Paragraph 122**: In her September 23, 2022 letter to the Court, Fluke-Ekren's daughter described contracting typhoid fever while Fluke-Ekren was training her in Syria.  The letter speaks for itself and further describes Witness-1's dangerous and arduous journey while crossing the Syrian-Turkish border during that period.

**Paragraph 123**: As noted in the government's CVRA motion, Fluke-Ekren's daughter will discuss this incident during her victim allocution and explain how it is directly related to the ISIS-related conspiracy to which Fluke-Ekren has pleaded guilty.  *See* Dkt. No. 48, Ex. 3 at 3-4.

**Paragraph 124**: As noted in the government's CVRA motion, Fluke-Ekren's daughter will discuss this horrific incident during her victim allocution and explain how it is directly related to the ISIS-related conspiracy to which Fluke-Ekren has pleaded guilty.  *Id.* at 4-5.

**Paragraph 125**: As noted in the government's CVRA motion, Fluke-Ekren's daughter will explain during the sentencing hearing how Fluke-Ekren's ISIS-related weapons and explosives training affected her.  *See* Dkt. No. 48 at 7, 10-12, 14.  To the extent that Fluke-Ekren is now denying that she militarily trained her, the government is prepared to introduce recorded jail calls (which have been disclosed to the defense) containing Fluke-Ekren's admissions to the contrary, along with grand jury testimony from other witnesses who personally observed Fluke-Ekren training her daughter and other minors with firearms and explosives in Syria.

**Paragraph 126**: Same response set forth in paragraph 101.  Fluke-Ekren's daughter will discuss this painful memory during her victim allocution.  The Court will have the opportunity to

assess her demeanor and credibility.  This information is directly related to the ISIS-related conspiracy to which Fluke-Ekren has pleaded guilty.

**Paragraph 128**: These statements are attributed to Fluke-Ekren's father and stepmother in the PSR.  The statements corroborate the September 19, 2022 and September 23, 2022 letters to the Court from Fluke-Ekren's son and daughter.  It is no different than the PSR containing statements attributed to Fluke-Ekren about her personal history and characteristics.

**Paragraph 129**: The information contained in this section of the PSR is based on an interview with Fluke-Ekren's former longtime friend in which the U.S. Probation Officer participated with undersigned counsel and the FBI on September 9, 2022.  As the September 19, 2022 letter from Fluke-Ekren's son states, "The only time there was relief was when we were in the presence of an outsider . . ."  Moreover, it is common sense that this highly sophisticated and calculated international terrorist, who successfully evaded detection and capture across multiple countries for over a decade, would not abuse her children in front of her friend.[4]

Nonetheless, as stated above and given that her children's letters to the Court have been made part of the record in this case (including as attachments to the PSR), the government will focus its upcoming sentencing argument on Fluke-Ekren's terrorism-related conduct and the offense of conviction for which she has been found guilty.

---

[4] Significantly, Fluke-Ekren's son sent Fluke-Ekren a private email on April 25, 2014 in which he confronted her about her abusive and neglectful conduct towards him and his siblings.  This email was previously disclosed to the defense and the U.S. Probation Office.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      /s/ Raj Parekh
         Raj Parekh
         First Assistant United States Attorney
         John Gibbs
         Assistant United States Attorney
         United States Attorney's Office
         Eastern District of Virginia
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         Raj.Parekh@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF)

to all counsel of record in this case.  I will also provide a copy of this filing to the U.S. Probation

Office.

Raj Parekh
First Assistant United States Attorney